■    JOSEPH HARRIS, Respondent, v. BERTHA L. UHLENDORF et al., as Executors of FRANK A. LUDLAM, Deceased, et al., Appellants.— Separate appeals by defendants Uhlendorf and Zausmer and by defendant the Title Guarantee Company from an interlocutory judgment of the Supreme Court, Nassau County, dated July 6, 1967, which dismissed the counterclaims after a nonjury trial of the counterclaims; the appellants have limited their appeals to the respective portions of the judgment which affect them or it. Judgment modified, on the law and the facts, by amending the decretal paragraph so that it shall provide (1) that only the counterclaims of the Title Guarantee Company are dismissed;

and (2) that defendants Uhlendorf and Zausmer are entitled to judgment in their favor upon their counterclaim for reformation to the extent demanded by them therein. As so modified, judgment affirmed, with costs to appellants Uhlendorf and Zausmer against respondent and with costs to respondent against appellant the Title Guarantee Company. Findings of fact below inconsistent herewith are reversed and new findings of fact are made as indicated herein. Prior to December, 1930, Frank Ludlam and Charles Ludlam owned a tract of land at Jamesport, Suffolk County, which parcel was crossed from east to west by Peconic Bay Boulevard. Between December, 1930, and September, 1943, they made 10 conveyances of parts of that tract. In 1944, Charles died intestate. In May, 1947, Frank and Charles' widow and children delivered a deed to Frank's daughter, defendant Bertha L. Uhlendorf, by means of which they conveyed to her, as the nominee of Frank, the tract owned by Frank and Charles in December, 1930, but excepting therefrom the premises conveyed by the above 10 conveyances. Thereafter, defendant Uhlendorf made three conveyances from the Jamesport tract, one to Frederic Biggs in 1947, another to Edwin Rudd in 1948, and another to Harry and Helen Wivczar in 1948. After the conveyance to Wivczar in 1948, defendant Uhlendorf held title to parts of the Jamesport tract which lay north and south of Peconic Bay Boulevard. In 1951, Frank Ludlam died and, in 1959, an intermediate decree of the Surrogate's Court, Nassau County, adjudged that parts of the remaining Jamesport tract, title to which was still held by defendant Uhlendorf, were assets of his estate. In March, 1965 one El Rena Schoelles moved in the Surrogate's Court, Nassau County, to compel defendants Uhlendorf and Zausmer, executors of the estate of Frank Ludlam, to sell all the real property held by them as assets of that estate. The Surrogate, by order dated March 19, 1965, granted the Schoelles motion "to the extent hereinafter set forth" and "otherwise in all respects denied" it. The Surrogate directed that "the seven parcels of real property owned by the estate described in the notice hereto annexed * * * be sold at public auction by the Surrogate in the Surrogate's Courtroom * * * on the 25th day of May, 1965 * * * upon the terms and conditions set forth in the notice * * * hereto annexed and in the form of contracts hereto annexed." The Surrogate's order provided for publication of the notice of sale. The notice of sale informed its readers of the judicial sale, the bidding terms and as follows: " each successful bidder will be required to sign a contract for the purchase of the property in the form annexed to * * * an order of the Surrogate * * * dated March 19th, 1965. Said contracts contain additional terms of sale applicable to the several parcels. Said contracts may be examined at the office of the clerk of the Surrogate's Court ". The notice of sale listed descriptions of the seven parcels ordered to be sold; the last of the descriptions, under the heading " Parcel #7 ", applicable to the Jamesport tract, was: " Approximately 20 acres of vacant land in Jamesport, *on the north side of Peconic Bay Boulevard* opposite the intersection of Morningside Avenue and Peconic Bay Boulevard; southerly boundary, frontage on Peconic Bay Boulevard, approximately 1,136 feet, easterly boundary approximately 738 feet, northerly boundary approximately 761.5 feet and westerly boundary approximately 942 feet" (emphasis added). However, the contract of sale for " Parcel #7 ", annexed to and required by the Surrogate's order to be signed by the successful bidder and defendants Uhlendorf and Zausmer, described the Jamesport tract that was to be sold by (1) setting forth a metes and bounds description of the tract to which Frank and Charles had held the fee before the 10 conveyances made by them in the period 1930–1943; (2) excepting therefrom the latter 10 conveyances, but identifying each conveyance only by setting forth the name of the grantee, the date of the deed, and the date and liber and page of

the deed's recording; (3) excepting, in addition and in like form, the 1947 deed to Frederic Biggs; and (4) referring to the tract to be sold as "Being the premises referred to on the assessment roll of the Town of Riverhead as item number 1596, page 136, tax book number 1." By the use of the metes and bounds description and the listing of conveyances excepted therefrom, defendants Uhlendorf and Zausmer undertook to convey to the successful bidder the parcels that had been conveyed by the Rudd and Wivczar deeds in 1948, parcels which had been improved with nine or more houses and lay south of Peconic Bay Boulevard, an undertaking which conflicted not only with the notice of sale but, in addition, with the matter contained in the deed's "Being" clause, for, though no other fact on the point appears in the record, plaintiff's reply conceded that the assessment roll of the Town of Riverhead indicated that the parcel listed therein lay north of Peconic Bay Boulevard. Defendant Zausmer, an attorney, had prepared both the notice of sale and the contract of sale, believing that the estate did not own property south of Peconic Bay Boulevard and ignorant of the Rudd and Wivczar deeds, of which defendant Uhlendorf had failed to inform him. During the week prior to the judicial auction scheduled for May 25, 1965, plaintiff, a real estate dealer of considerable experience, read the published notice of sale. He went to the site of the Jamesport property but, he later testified, he "couldn't tell specifically the property as advertised." Accordingly, several days before the sale he went to the Surrogate's Court and there read the property's description in the contract of sale. The day before the sale he returned to the site of the property. Now, plaintiff claimed, he "found the area"; and he was able to identify "the property as per the contract", though, he admitted, he had neither examined any of the 11 deeds listed as excepted conveyances nor had he examined the assessment roll of the Town of Riverhead. On May 25, prior to the taking of bids on the Jamesport parcel, a clerk of the Surrogate's Court read aloud the description of that property in the notice of sale. Thereafter "Parcel #7" was knocked down to plaintiff for $40,000, whereupon he and defendants Uhlendorf and Zausmer signed the contract of sale. Plaintiff applied to defendant the Title Guarantee Company for title insurance, leaving with its officer the contract of sale's description of the property to be conveyed and stating that he had purchased the property at an auction in the Surrogate's Court. On June 30, 1965, when title was closed and defendant Title's insurance issued, plaintiff received from defendant Uhlendorf a deed which described the property it conveyed in the same manner as the contract of sale, except that the deed omitted the "Being" clause recited in the contract of sale. Though defendant Title's examiner had learned of the 1948 Rudd and Wivczar deeds, Title's policy failed to list them as exceptions. Moreover, contrary to its practice, Title had failed to examine the estate's file in the Surrogate's Court. In the fall of 1965 plaintiff commenced the action at bar alleging that defendants Uhlendorf and Zausmer had, in their contract of sale, fraudulently or innocently represented that they were the fee owners of the parcel described therein, when in fact parts of that parcel had been conveyed to other persons, and that defendant Uhlendorf had thereby breached her covenant against grantor's acts. Against defendant Title, plaintiff alleged that Title's policy did not make exceptions for the latter conveyances and, hence, Title was liable to him in the sum provided by its policy. In answer, defendants Uhlendorf and Zausmer alleged, among other things, a counterclaim for reformation of the contract of sale and the deed, asserting that the parties to the contract had intended a sale and purchase only of lands north of Peconic Bay Boulevard but that, because of their mutual mistake, the contract and deed did not exclude property south of that boulevard. Defendant Title, among other things, crossclaimed against defendants Uhlendorf and Zausmer and alleged two counter-

claims, one for reformation of its policy on the grounds asserted by defendants Uhlendorf and Zausmer in their counterclaim for reformation and another for judgment declaring that its policy was void with respect to property south of Peconic Bay Boulevard, because of plaintiff's failure to disclose material facts to Title. After trial of the severed counterclaims before Special Term, the counterclaims were dismissed on the merits. In our opinion, the counterclaim of defendants Uhlendorf and Zausmer should have been granted, though the counterclaims of defendant Title were properly dismissed. In offering $40,000 for "Parcel #7", plaintiff must have relied upon the notice of sale to determine the location, approximate area and condition of the Jamesport property. A reading of only the description of the property in the contract of sale does not inform the reader whether the Jamesport tract lies wholly to the north or wholly to the south, or partly to the north or partly to the south, of Peconic Bay Boulevard because a metes and bounds description followed by excepted deeds, each identified only by the name of the grantee, the date of the deed and the date and liber and page of the deed's recording, cannot give the reader any conception of the location and size of the property that remained to be conveyed after the making of the excepted conveyances. Thus, if prior to the sale plaintiff had read the contract's description of the property to be conveyed, and neither examined the contents of the excepted deeds nor the assessment roll of the Town of Riverhead, then he had no knowledge of the location and area of the property for which he later offered $40,000, unless he relied upon the notice of sale which placed the property north of Peconic Bay Boulevard. Hence, plaintiff and defendants Uhlendorf and Zausmer must have thought, at the time of their execution of the contract of sale, that the contract described the Jamesport parcel described in the notice of sale, a descriptive fact about which they were mutually mistaken and for which reformation is available. (See *Hart* v. *Blabey*, 287 N. Y. 257; *Bush* v. *Hicks*, 60 N. Y. 298, 301–302.) With respect to defendant Title's counterclaim for judgment declaring its policy void insofar as it applies to property south of Peconic Bay Boulevard, the record does not show that plaintiff suppressed or failed to disclose to Title facts affecting the insurance for which he had applied. With respect to defendant Title's counterclaim for reformation, the proof shows that plaintiff and Title mutually intended to effect insurance concerning the fee title plaintiff was to receive to the property described in the contract of title insurance, a description taken from the contract of sale. In the latter respect plaintiff and Title were mistaken, but their mistakes were unilateral. Plaintiff thought the description described the twenty-acre parcel north of Peconic Bay Boulevard while Title thought the description was applicable to the property that it in fact described. Under such circumstances, the contract of title insurance may not be reformed, for only unilateral mistake, without fraud, is shown (cf. *Northeastern Shares Corp.* v. *International Ins. Co.*, 240 App. Div. 80, affd. 265 N. Y. 574). Brennan, Acting P. J., Rabin, Hopkins, Munder and Martuscello, JJ., concur.